IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEWELS BY IROFF, INC., d/b/a Iroff & Son Diamond Importers, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITAS TECHNOLOGY CORPORATION, f/k/a Stanley Convergent Security Solutions, Inc.,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:23-CV-556-TWT |

**OPINION AND ORDER**

This is a breach of contract and tort action. It is before the Court on the Defendant Securitas Technology Corporation's Motion to Dismiss [Doc. 4]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 4] is GRANTED.

I.   **Background**

The Court accepts the facts as alleged in the Complaint as true for purposes of the present motion to dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). Plaintiff Jewels by Iroff, Inc. ("Iroff") is a high-end jewelry store located in Alpharetta, Georgia. (Compl. ¶¶ 1,3). Plaintiff Jewelers Mutual Insurance Company ("Jewelers Mutual") issued a policy to Iroff insuring the store, "including but not limited to the real and business personal property, and/or extra expenses incurred as [a] result of any

losses." (*Id.* ¶ 5). Defendant Securitas Technology Corporation ("Securitas") is engaged in the business of providing security and alarm monitoring services. (*Id.* ¶ 6). Iroff contracted with the Securitas to provide security and alarm monitoring services at its store beginning with a contract dated January 14, 2008 ("Contract").[1] (*Id.* ¶¶ 10-12). As relevant to the present motion, the Plaintiffs allege that the Contract required Securitas to remotely monitor Iroff's store 24/7, as defined by Underwriting Laboratories ("UL") certification requirements. (*Id.* ¶ 12). "The monitoring of alarm and supervisory signals and events include[d], inter alia, power outages, disruptions, fires and/or burglaries at the subject property." (*Id.* ¶ 12).

On the night of February 22, 2022, Iroff's store was closed for business and the security alarm system was activated. (*Id.* ¶ 13). Sometime later that night, thieves entered the store. (*Id.* ¶ 14). The thieves were able to locate the alarm system's controls, cut the communication lines, and disable the alarm system. (*Id.* ¶ 15). The thieves then broke into displays and two safes, stealing fine jewelry and damaging store property. (*Id.* ¶ 16). The Defendant did not notify Iroff of an alarm, a false alarm, or any situation at the store. (*Id.* ¶ 17). Additionally, the alarm system's communication method, which included

---

[1] The Contract is between Iroff and a company known as "HSM", and the Contract Rider is between Iroff and another company known as Stanley Convergent Security Solutions, Inc. The parties do not dispute that both of these companies were predecessors of the Defendant Securitas, so for clarity, the Court will refer to Securitas as a party to the Contract. (Compl. ¶ 6); (Def.'s Br. in Supp. of Mot. to Dismiss, at 2).

"cellular communication along with ethernet and hard wired telco" did not alert to the communication line interruption that occurred when the thieves cut the wiring. (*Id.* ¶ 18). As a result, neither Iroff nor the police were notified of the February 2022 break in. (*Id.* ¶ 19). Further, the Plaintiffs allege, "[t]he UL certifications for this alarm system indicated that [Iroff] was promised and understood to have UL Certificated line security, but it was not installed and/or operational at the time of this loss." (*Id.* ¶ 20).

In its Complaint, the Plaintiffs brought claims for negligence (Count I), breach of contract and warranty (Count II), gross negligence (Count III), and fraudulent misrepresentation (Count IV). (*Id.* ¶¶ 21-43). In Count I, the Plaintiffs allege that the Defendant breached its duty of care in at least 15 ways, mostly with regard to failing to notify Iroff and the police of an alarm signal and with the alarm system's lack of compliance with UL certifications. (*Id.* ¶¶ 21-35). In Count II, the Plaintiffs argue that the Defendant breached its contractual obligation to provide an alarm system and monitoring services that were to be "performed in a good, safe and workmanlike manner, and in accordance with all Underwriting Laboratories certification requirements, industry standards and applicable codes." (*Id.* ¶ 27). In Count III, the Plaintiffs allege that the Defendant was grossly negligent because it knew or should have known that its alarm system could be easily rendered ineffective by burglars without any notification sent, but the Defendant never informed Iroff of this deficiency and never undertook corrective action to make sure the alarm

3

system complied with both the Contract and UL certification requirements. (*Id.* ¶¶ 30-37). And in Count IV, the Plaintiffs allege that the Defendant made deceptive, untrue, and misleading representations that the alarm system and monitoring services were UL compliant. (*Id.* ¶¶ 38-43).

The Plaintiffs attached to their Complaint a document titled "Contract Rider" dated May 1, 2008. (Compl., Ex. 1 ("Contract Rider")). The Contract Rider appears to concern the installation of two "indicating pushbuttons" to the system, which are unrelated to the Plaintiffs' claims. (*See id.*). Although unclear, near the top of the document, the Contract Rider appears to state that it "amends the Contract Agreement between the parties dated May [] 2008 (the "Agreement") covering the furnishing of service and equipment to the Customer's premises[.]" (*See id.*). The Contract itself, which is titled "Installation and Services Agreement," is dated January 14, 2008, and was provided by the Defendant with its Motion to Dismiss. (Mot. to Dismiss, Ex. 2 at 2 ("Contract")). The Contract contains several clauses relevant to the Defendant's Motion to Dismiss:

> It is understood and agreed by the parties hereto that [Securitas] is providing a system and/or service designed to reduce the risk of loss only . . . that [Securitas] is not liable for losses which may occur in cases of malfunction or nonfunction of any system provided by, or serviced by, [Securitas;] that [Securitas] is not liable for losses which may occur in the monitoring, repairing, signal handling or dispatching aspects of the service, even if due to [Securitas's] negligence or failure of performance . . . that [Securitas] is not an insurer; and that insurance covering personal injury, property loss, damage to and on Customer's premises must be obtained and/or maintained by Customer.

4

(Contract ¶ 4.A.).

> It is agreed that it is impractical and extremely difficult to fix actual damages which may arise in situations where there may be a failure of the system and/or services provided, due to the uncertain value of customer's property or the property of others kept on the protected premises which may be lost, stolen, destroyed, damaged or otherwise affected by occurrences which the system or service is designed to detect or avert, inability of [Securitas] to guarantee police, fire department and medical alert response time, and establishing a causal connection between the system or service problems and Customer's possible loss. Therefore, if Article 4A is judicially determined to be invalid or unenforceable and any liability is judicially imposed on [Securitas] . . . such liability shall be limited to an amount equal to the annual service charge or $10,000, whichever is less . . . The payment of this amount shall be [Securitas's] sole and exclusive liability regardless of whether loss or damage is caused by the performance or nonperformance of obligations under this Contract or by negligence, active or otherwise, of [Securitas.]

(Contract ¶ 4.B.).

> Customer understands that, if the system installed under this Agreement is monitored, due to the nature of the method used for communicating alarm signals to the Customer Service Center, there may be times when that communication method is not able to transmit signals and [Securitas] will not receive alarm signals. Digital communicators use standard telephone lines and [Securitas] does not receive signals when the telephone systems becomes non-operational or the telephone line is cut, interfered with, or otherwise damaged.

(Contract ¶ 8.C.).

> Customer does hereby for itself and other parties claiming under it, release and discharge [Securitas] from and against all claims arising from hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against [Securitas].

(Contract ¶¶ 12). Additionally, on the final page of the Schedule of Service and

Protection section, there is an "x" under Additional Services next to an option titled "UL Intrusion Alarm Certificate." (Contract at 5). There is no other mention of UL compliance in the Contract. (*See generally* Contract). Neither party has attached a UL Intrusion Alarm Certificate to their filings or alleged that one was issued.

## II. Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Amwi. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). However, the Court is only required to draw *reasonable* inferences in the Plaintiff's favor. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Similarly, although the court is obliged to accept well-pleaded factual allegations as true, "conclusory allegations . . . are not

6

entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). Therefore, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). Courts can consider documents outside the complaint in ruling on a motion to dismiss if: (1) the plaintiff refers to them in the complaint; (2) they are attached to the motion to dismiss; (3) their contents are not in dispute; and (4) they are central to the plaintiff's claim. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1214 n.1 (11th Cir. 2020).

### III.   Discussion

The Defendant presents arguments against all four of the Plaintiffs' claims in its Motion to Dismiss. The Court will address the arguments as to each claim in turn. As an initial matter, however, the Court finds that it can consider the Contract attached to the Defendant's Motion to Dismiss in ruling on the Motion, even though it was not attached to the Complaint. *See Cisneros*, 972 F.3d at 1214 n.1. Although the Plaintiffs dispute whether the Contract or a third agreement governs the present case, the Plaintiffs do not dispute the

7

contents of the Contract presented by the Defendant. The remaining *Cisneros* factors are also met. *See id.*

Relatedly, the Plaintiffs argue that they attached the Contract Rider because it mentions another contract, dated May 1, 2008, that may control the parties' relationship. (Br. in Opp. to Mot. to Dismiss, at 8-9). On that basis, the Plaintiffs assert that there is a question of fact as to whether any contractual waiver and exculpatory or limitations of damages provisions are applicable. (*Id.* at 9). The Court finds this assertion to be disingenuous, at best. This is particularly so in light of the fact that the Plaintiffs assert a breach of contract claim in their Complaint without making an effort to produce the purported additional contract dated May 1, 2008 that would govern the analysis of that claim. Additionally, much of the Plaintiffs' allegations in their other claims center around UL certification, a box that appears checked in the January 14, 2008 Contract which the Plaintiffs reference in their Complaint. (*See* Compl. ¶ 12) (citing to Exhibit A, the Contract Rider, rather than the January 14, 2008 Contract). Ironically, UL certification was not a checked option in the Contract Rider that the Plaintiffs produced. (*See* Compl., Ex. A at 3). True, the Court is obliged to accept factual allegations pleaded in the Complaint as true, but only well-pleaded ones. *See Quality Foods de Centro Am., S.A.*, 711 F.2d at 994-95; *Randall*, 610 F.3d at 709-10. Plainly, by alleging the January 14, 2008 Contract in their Complaint as the basis of their UL certification arguments and attaching the May 1, 2008 Contract Rider, the Plaintiffs have conceded that

8

those two documents govern the parties' position in this matter. The Plaintiffs' arguments otherwise in their response to the Defendant's Motion to Dismiss entirely contradict their Complaint and undermine the basis for their claims. For these reasons, it is not reasonable for the Court to infer the existence of a third contract based solely on the May 1, 2008 reference at the top of the Contract Rider. *See Gates*, 884 F.3d at 1296.

### A. Applicability of Liability Limiting Clauses in the Contract

In its Motion to Dismiss, the Defendant argues first that the Plaintiffs' claims against it are subject to dismissal pursuant to the Contract's subrogation waiver clause. (Br. in Supp. of Def.'s Mot. to Dismiss, at 11-12). Additionally, the Defendant contends that the Contract contained a valid exculpatory provision as well as a limitation of damages provision that shifted the risk for failure of the alarm system to Iroff. (*Id.* at 12-13). Specifically, the Defendant notes the Contract provisions explaining that it was unable to guarantee receipt of alarm signals and prevent service interruptions. (*Id.* at 13). The Defendant argues that these clauses were prominently located in the Contract and were clear and unambiguous, making them enforceable under Georgia law. (*Id.* at 15-16). In any event, the Defendant contends that even if the Court finds the clauses to be unenforceable, the Contract specifically limits the available damages to an amount equal to the annual service fee. (*Id.* at 16).

In response, the Plaintiffs argue that the subrogation waiver and the exculpatory and limitation of damages provisions of the Contract are

inapplicable to their claims, in part because Iroff seeks damages beyond the scope of its insurance coverage and also because the Defendant's conduct precludes enforcement of those provisions. (Br. in Opp. to Mot. to Dismiss, at 9-10). In particular, the Plaintiffs assert that the cited provisions do not apply to the Defendant's gross negligence and fraud claims; namely, that the Defendant failed to inform Iroff that the alarm system and monitoring services were not UL compliant. (*Id.* at 10-14).

In Georgia, the construction of a contract is a matter of law for the court. *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 1279, 1284 (N.D.Ga. Mar. 1, 2021) (citation omitted). In interpreting a contract, "the trial court must [first] decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract." *Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 638 (2016). And "where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." *Ainsworth v. Perreault*, 254 Ga. App. 470, 476 (2002).

Subrogation is an equitable doctrine that allows an insurer to "step into the shoes of the insured and assert any cause of action against a third party that the insured could have asserted for his or her own benefit had the insured not been compensated by the insurer." *Allstate Ins. Co. v. ADT, LLC*, 194 F. Supp. 3d 1331, 1335 (N.D. Ga. July 1, 2016). Georgia permits subrogation

waiver clauses in contracts, "which shift the risk of loss to one party's insurance company regardless of who is at fault." *Colonial Props. Realty Ltd. P'ship v. Lowder Const. Co.*, Inc., 256 Ga. App. 106, 112 (2002). With a subrogation waiver, the parties "agree[] to look solely to insurance to cover their losses." *Allstate Ins. Co.*, 194 F. Supp. 3d at 1336. Nonetheless, subrogation waivers do not exculpate a defendant for acts of gross negligence. *Colonial Props. Realty Ltd. P'ship*, 256 Ga. App. at 112.

Additionally, exculpatory clauses "in which a business seeks to relieve itself from its own negligence are valid and binding" in Georgia, "unless they purport to relieve liability for acts of gross negligence or wilful [sic] or wanton conduct." *Monitronics Intern., Inc. v. Veasley*, 323 Ga. App. 126, 135 (2013) (quotation marks and citation omitted). However, because exculpatory clauses often waive substantial rights, "they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous." *Id.* (quotation marks and citation omitted).

The Court finds the Plaintiffs arguments as to the applicability of the subrogation waiver and the exculpatory provisions to be misplaced. Contrary to Iroff's position, a subrogation waiver is specifically intended to prohibit a plaintiff from seeking damages beyond the scope of their insurance coverage and to encourage parties to properly insure themselves against any applicable risks. *See Allstate Ins. Co.*, 194 F. Supp. 3d at 1336. Here, the subrogation clause says as much, in no uncertain terms:

11

> Customer does hereby for itself and other parties claiming under it, release and discharge [Securitas] from and against all claims arising from hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against [Securitas].

(Contract ¶¶ 12). There is no plausible ambiguity here that could either give Iroff the right to seek damages beyond the limits of its insurance coverage with Jeweler's Mutual, or that could give Jeweler's Mutual the right to recover the limits of its policy that it paid out to Iroff for any covered losses arising out of the burglary. Therefore, the Court has no option other than to enforce the terms of the subrogation waiver. *Ainsworth*, 254 Ga. App. at 476 (providing that "where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court."). In any event, the Plaintiffs arguably conceded the applicability of both the subrogation waiver and the exculpatory provision to their breach of contract and negligence claims by arguing only that these provisions cannot relieve liability for willful and fraudulent conduct, along with gross negligence, under Georgia law. (Pls.' Br. in Opp. to Mot. to Dismiss, at 10); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D.Ga. Mar. 28, 2001). And for the reasons explained below, the Plaintiffs have failed to properly state claims for either gross negligence or fraudulent misrepresentation under Georgia law.

The Plaintiffs' breach of contract and negligence claims are also barred by the exculpatory provision in the Contract, which provided that:

> [Securitas] is not liable for losses which may occur in cases of malfunction or nonfunction of any system provided by, or serviced by, [Securitas;] that [Securitas] is not liable for losses which may occur in the monitoring, repairing, signal handling or dispatching aspects of the service, even if due to [Securitas's] negligence or failure of performance.

(Contract ¶ 4.A.). And even if the Court were to find that provision unenforceable, the parties agreed that Securitas's liability would be limited to the cost of the annual service charge, which appears to be $199.00. (Contract ¶¶ 4.B. & at 5). But here, the exculpatory provision meets all of the requirements under Georgia law: the clause does not purport to relieve Securitas from liability for gross negligence or willful or wanton conduct, and it is "explicit, prominent, clear[,] and unambiguous." *Monitronics Intern., Inc.*, 323 Ga. App. at 135. The clause appears under a heading titled "Liquidated Damages and [Securitas's] Limits of Liability," is set off in all-caps text, and appears on the first page of the Contract. (Contract ¶ 4.B.). And the Plaintiffs have not alleged that Iroff did not have a "meeting of the minds" with the Defendant as to the meaning or implications of the exculpatory provision when the Contract was executed. *See Monitronics Intern., Inc.*, 323 Ga. App. at 135. Therefore, the exculpatory provision is enforceable and bars the Plaintiffs' breach of contract and negligence claims.

For these reasons, even construing all well-pled facts in the light most favorable to the Plaintiffs, the Plaintiffs have failed to state plausible claims for breach of contract and negligence, and those claims should be dismissed.

*Ashcroft*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### B. Gross Negligence

The Defendant next argues that the Plaintiffs' claims are barred by the economic loss doctrine. (Br. in Supp. of Def.'s Mot. to Dismiss, at 16-17). On that basis, the Defendant asserts that Iroff bargained for the risk of the loss it suffered in the Contract by agreeing to look solely to its insurance to protect itself against burglary. (*Id.* at 17-18). Additionally, the Defendant asserts that the Plaintiffs' claim is nothing more than a conclusory allegation that the Defendant failed to properly monitor the alarm system, which fails to state a claim for gross negligence under Rule 12(b)(6). (*Id.* at 20-21).

The Plaintiffs respond that the economic loss doctrine is inapplicable to their claims because they suffered damage to "other property" as that phrase is defined under Georgia law and because fraud is an exception to the application of the economic loss doctrine. (Br. in Opp. to Mot. to Dismiss, at 14-15, 20-21). As to their gross negligence claim, the Plaintiffs argue that the Defendant knew or should have known that the alarm system and monitoring services were not UL compliant and could therefore be easily rendered ineffective by a burglar, and that its failure to inform Iroff or remedy these issues constituted gross negligence under Georgia law. (*Id.* at 21-23).

In Georgia, "a breach of contract claimant may only bring a tort claim where, in addition to breaching the contract, the defendant also breached a duty imposed by law. *Fay v. Custom One Homes, LLC*, 276 Ga. App. 188, 193

14

(2005). And under Georgia law, gross negligence is "the absence of slight diligence, and slight diligence is defined in OCGA § 51-1-4 as that degree of which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." *Abdel-Samed v. Dailey*, 294 Ga. 758, 811 (2014) (quotation marks and citation omitted).

Here, the Court finds that the Plaintiffs have failed to state a claim for gross negligence under Georgia law. The crux of this claim is that the alarm system and monitoring services the Defendant provided to Iroff were not UL compliant. (Compl. ¶¶ 32-34). Even assuming the Contract required UL compliance to the extent that the Plaintiffs allege, and it is not apparent to the Court that it did, such a claim would sound in breach of contract rather than tort. *Fay, LLC*, 276 Ga. App. at 193. The Plaintiffs neither recite the standard for gross negligence under Georgia law nor cite any authority under which a lack of "ordinary care and caution" could constitute a claim for gross negligence. (*See* Compl. ¶ 31). And even if it could, the Defendant cannot fairly be said to have failed to exercise such care in installing the alarm system at issue here. The Contract unambiguously stated that the alarm system that Iroff chose involved a digital communicator that relied on a standard telephone line, and that if that line was cut, the Defendant would not receive alarm signals. (Contract ¶ 8.C.). Iroff further agreed that it understood that the Defendant "offer[ed] several levels of communication methods of alarm signals to the Customer Service Center and that the [alarm system and monitoring

15

services] ha[d] been chosen by [Iroff] after considering and balancing the levels of protection afforded by various methods and the related costs." *Id.* Therefore, the Plaintiffs have not plausibly alleged that the Defendant was grossly negligent under Georgia law for installing and monitoring the exact alarm system that Iroff contracted for. On that basis, the Court need not address the parties' economic loss doctrine arguments, and the Plaintiffs' claim for gross negligence should be dismissed.

### C. Fraudulent Misrepresentation

Finally, the Defendant argues that the Plaintiffs' fraudulent misrepresentation claim "contains almost no details and is supported by minimal factual allegations in the Complaint," failing to satisfy either Federal Rule of Civil Procedure 9(b) or 12(b)(6). (Br. in Supp. of Def.'s Mot. to Dismiss, at 21-23). The Defendants also assert that the Plaintiffs' claim is contradicted by the express terms of the Contract providing that the Defendant would not be responsible for any communication failures or interruptions in service. (*Id.* at 23-24).

The Plaintiffs summarily respond that they have properly alleged their fraud claim, reiterating the allegations supporting their claim. (*See* Br. in Opp. to Mot. to Dismiss, at 24-25). The Plaintiffs clarify that they are not pursuing the Defendant "simply because the alarm system did not work. [The] Plaintiffs contend that as a result of [the Defendant's] fraudulent representations, it was induced into installing an [inferior] alarm system." (*Id.* at 25).

16

To state a claim for fraudulent misrepresentation under Georgia law, the Plaintiffs must show that: (1) "[the Defendant made] false representations;" (2) "[the Defendant] knew the representations were false at the time (scienter);" (3) "[the Defendant] made the representations intending to deceive [Iroff] and induce it to [enter the Contract];" (4) "[Iroff] justifiably relied upon such representations;" and (5) "[the Defendant's] misrepresentations resulted in damages and loss to [Iroff]." *Grand Master Cont., L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship*, 314 Ga. App. 449, 451 (2012).

Here too, the Plaintiffs have failed to state a claim for fraudulent misrepresentation. The Plaintiffs cannot establish any of the elements of fraudulent misrepresentation under Georgia law. As discussed previously, the Contract clearly stated that the type of alarm system Iroff chose relied on telephone lines for communication that were susceptible to being cut and, if the lines were cut, the Defendant would not receive alarm signals. (*See* Contract ¶ 8.C.). That is precisely what the Plaintiffs allege happened during the burglary at issue that resulted in Iroff's losses. Therefore, the representations that the Defendant made with regard to the alarm system it installed were not false; in fact, they were entirely accurate. *See Grand Master Cont., L.L.C.*, 314 Ga. App. at 451. The Plaintiffs assert that the Defendant knew that the alarm system and monitoring services "could be easily rendered ineffective by a burglar without any notification of the burglary," and that is

17

true. (Compl. ¶ 39). But the Plaintiffs' claim fails because Iroff was *also* aware of that possibility. Plainly, the Defendant made no misrepresentations at all, let alone fraudulent ones. *See id.*

Finally, the Plaintiffs make much of a single "x" next to the words "UL Intrusion Alarm Certificate" on the last page of the Contract, implying that this somehow spelled out detailed terms for UL compliance with regard to almost every single aspect of the alarm system itself and the associated monitoring services. (*See* Contract at 4). But where the terms of the contract are clear, as is the case here, the Court is not permitted to read an intent into a contract that the parties did express. *See Envision Printing, LLC*, 336 Ga. App. at 638. The Contract clearly laid out the standards and risks of the alarm system and communication method that the parties chose. (*See* Contract ¶¶ 4, 8). Even were the Court to construe the "x" next to UL Intrusion Alarm Certificate as adding terms to the Contract, reading such strict UL compliance requirements into the Contract would contradict the express terms in paragraphs 4 and 8. *See Brown v. Brown*, 359 Ga. App. 511, 520 (2021) ("It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms."). Therefore, the Plaintiff has not actually alleged that the Defendant made any misrepresentations with regard to UL compliance, and their allegations cannot serve as the basis for a fraudulent misrepresentation claim under Georgia law. For these reasons,

18

even construing the factual allegations in the light most favorable to the Plaintiffs, their fraudulent misrepresentation claim is subject to dismissal. *Ashcroft*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### D. Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 4] is GRANTED. The Court will allow the Plaintiffs one opportunity to correct the pleading deficiencies identified herein, if they so choose, and specifically to produce a copy of any contract dated May 1, 2008 on which they purport to rely. *See Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (providing that "where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice."). Therefore, the Court GRANTS the Plaintiffs leave to file an amended complaint within 14 days of the date of this Order.

SO ORDERED, this   26th   day of September, 2023.

THOMAS W. THRASH, JR.
United States District Judge